UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
5:22-cv-00014-MR

| TERRANCE TRENT, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | ORDER |
| | ) | |
| KAREN BAERS, | ) | |
| | ) | |
| Defendant. | ) | |

**THIS MATTER** comes before the Court on Defendant's Motion for Summary Judgment [Doc. 35] and Plaintiff's untimely Motion for Summary Judgment [Doc. 38], which the Court will construe as a Response to Defendant's Motion for Summary Judgment.

**I.    PROCEDURAL BACKGROUND**

Pro se Plaintiff Terrance Trent ("Plaintiff") filed this action pursuant to 42 U.S.C. § 1983 against Defendants FNU Baers,[1] Chris Beicker, and Latrice Blackburn, all identified as officers at Alexander Correctional Institution ("Alexander") in Taylorsville, North Carolina. Plaintiff's unverified Complaint

---

[1] The true, full name of Defendant FNU Baers is Karen Baers. [See Doc. 17]. The Court will direct the Clerk to update the docket accordingly.

survived initial review on his Eighth Amendment excessive force claim against Defendant Baers. [Doc. 9 at 4-6]. Plaintiff's remaining claims and the remaining Defendants were dismissed for Plaintiff's failure to state a claim for relief. [Id. at 5-6]. The Court entered a scheduling order setting the dispositive motions deadline as January 16, 2023. [Doc. 18]. After three extensions, the dispositive motions deadline expired on May 18, 2023. [See 1/13/2023, 3/2/2023, and 4/3/2023 Text Orders].

On May 18, 2023, Defendant Baers timely moved for summary judgment. [Doc. 35]. In support of her motion, Defendant submitted a memorandum, her own Affidavit, Plaintiff's Offender Information Sheet, Plaintiff's Infraction Summary, Defendant's discovery responses, and the Incident Report. [Docs. 36, 36-1 to 31-6]. Defendant argues that she is entitled to summary judgment because she used the minimal amount of force reasonably necessary to obtain a proper correctional objective and because she is entitled to qualified immunity. [See Doc. 36].

On May 22, 2023, the Court entered an order in accordance with Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), advising the Plaintiff of the requirements for filing a response to the summary judgment motions and of the manner in which evidence could be submitted to the Court and ordering that Plaintiff must respond within 14 days of that Order. [Doc. 37].

2

On June 1, 2023, Plaintiff filed a "Motion for Summary Judgment" dated May 25, 2023, a week past the dispositive motions deadline.[2] [Doc. 38; see id. at 6-7]. Plaintiff submitted a statement made under penalty of perjury, an excerpt from Alexander's Use of Force Policy, an excerpt from Defendant Baers discovery responses, and select medical and mental health records. [Docs. 38, 38-1]. On June 23, 2023, Defendant timely responded to Plaintiff's motion. [Doc. 39]. Then, on July 10, 2023, Plaintiff filed an untimely reply [Doc. 40; see Doc. 40-2], which the Court will not consider.[3]

This matter is now ripe for adjudication.

## II. STANDARD OF REVIEW

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is material only if it might affect the outcome of the suit under governing law. Id.

---

[2] Because Plaintiff's motion was filed after the expiration of the dispositive motions deadline but within the response period, the Court will construe it as a response to the Defendant's summary judgment motion.

[3] The Court notes that the outcome would be the same if Plaintiff's reply were considered.

The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal citations omitted).

Once this initial burden is met, the burden shifts to the nonmoving party. The nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Id. at 322 n.3. The nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to defeat a motion for summary judgment. Id. at 324. Rather, the nonmoving party must oppose a proper summary judgment motion with citation to "depositions, documents, electronically stored information, affidavits or declarations, stipulations …, admissions, interrogatory answers, or other materials" in the record. See id.; Fed. R. Civ. P. 56(c)(1)(a). Namely, the nonmoving party must present sufficient evidence from which "a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248; accord Sylvia Dev. Corp. v. Calvert County, Md., 48 F.3d 810, 818 (4th Cir. 1995).

When ruling on a summary judgment motion, a court must view the evidence and construe all reasonable inferences and ambiguities against the movant and in favor of the nonmoving party. Wai Man Tom v. Hospitality Ventures LLC, 980 F.3d 1027, 1037 (4th Cir. 2020); see Anderson, 477 U.S. at 255. Facts, however, "must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." Scott v. Harris, 550 U.S. 372, 380 (2007). That is, "[w]hen the moving party has carried its burden under Rule 56(c), the opponent must do more than simply show there is some metaphysical doubt as to the material facts…. Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87, 106 S.Ct. 1348, 1356 (1986) (citation and internal quotation marks omitted).

## III. FACTUAL BACKGROUND

The relevant forecast of evidence in the light most favorable to Plaintiff is as follows.

On May 6, 2021, Plaintiff was housed at Alexander [Doc. 38 at 1] and Defendant was a Case Manager there [Doc. 36-4 at ¶ 3: Baers Dec.]. On this date at approximately 3:40 p.m., another offender, Lashune McCarthy, began assaulting Officer Thomas Panaro. [Doc. 36-6 at 6, 9]. Offender

5

Case 5:22-cv-00014-MR   Document 41   Filed 09/06/23   Page 5 of 13

McCarthy punched Officer Panaro in the face and head. Officer Panaro attempted to stop the assault and to protect himself. Officer Matthew Waller, who was witnessing the assault, responded to the scene with his baton. Offender McCarthy ran from the scene "down the mezzanine." [Id.]. Officers Panaro and Waller ordered Offender McCarthy to stop and submit to restraints. Offender McCarthy refused and "continued the assault". Officer Waller struck Offender McCarthy's upper arm with his baton to gain control and compliance. [Id. at 6]. A Code 7, an inmate assault on an officer, was called over the P.A. system in the Blue B-Pod Wing. [Doc. 36-4 at ¶ 5; Doc. 36-6 at 1]. Defendant heard the Code 7 and rushed to Blue B-Pod Wing to assist staff. [Doc. 36-4 at ¶ 6]. When she arrived, she "observed several offenders out and a lot of yelling." [Id. at ¶ 6]. Plaintiff was standing at the bottom of the stairs facing toward the evolving attack by Offender McCarthy. [Doc. 38 at 3]. As Defendant approached the bottom of the stairs, she yelled "get back" and pulled out her "expandable and rigid baton with a strong hand grip on [the] grip end and [a] support hand hold on [the] long end." [Doc. 36-1 at ¶ 7]. Plaintiff was not acting aggressively or in a threatening manner and was not assaulting anyone or causing any disturbance. [Doc. 38 at 3]. He was unaware of Defendant's presence and did not hear Defendant yell "get back" or any other warning. [Id. at 2-3]. Defendant heard no specific

6

response from the Plaintiff to ger order to "get back." Rather, he "just continued to yell either at [the Defendant] or towards the assault occurring on the second floor."[4] [Doc. 36-1 at ¶ 8]. Because Plaintiff did not respond or move, Defendant pushed the Plaintiff one time with her baton to create space so that the Plaintiff would not assault her or anyone else or attempt to get involved in the inmate assault on the officer. [Id. at ¶ 9]. Plaintiff claims Defendant pushed him against his back, while Defendant admitted to striking Plaintiff in the forearm. [See Doc. 36-6 at 2, 29; Doc. 38-1 at 14]. Defendant stood her position until additional staff entered the wing. [Doc. 36-6 at 25]. Once the other officers arrived, Defendant went up the stairs to more closely protect the officers attempting to detain the assaultive offender. [Doc. 36-1 at ¶ 10]. Plaintiff was not seen by medical after this incident, as would ordinarily be done when a prisoner gives notice of a use of force incident. [See Doc. 36-6 at 5, 28].

On May 7, 2021, after review of the video footage of the incident,[5] Plaintiff was charged with disobeying an order and placed in Restrictive Housing. [Doc. 36-6 at 3, 35]. The investigating officer concluded that

---

[4] Meanwhile, officers were using hands on force to gain control of Offender McCarthy and placed him prone to the ground. McCarthy continued to assault staff and refused to submit to handcuffs. Finally, Sergeant Richard Wilson used his taser on Offender McCarthy's lower back and officers were able to place him in restraints. [Doc. 36-6 at 6].

[5] The video footage of the incident is not part of the forecast of evidence before the Court.

7

Defendant "used the minimum amount of force reasonably necessary to obtain a proper correctional objective." [Doc. 36-6 at 3].

Plaintiff apparently suffers from chronic back pain secondary to a motor vehicle accident in 2014. On April 28, 2021, about a week before this incident, Plaintiff reported relative to his back pain, "I am doing a lot better, I am able to play basketball now." [Doc. 38-1 at 17]. On May 25, 2021, nearly three weeks after the use of force, Plaintiff was seen by medical staff for lower back pain. At that appointment, he reported that his pain was "worse since [he] got hit with a baton." [Id. at 19]. Plaintiff also reported that "recent lockdown and no movement is making him ache worse." [Id. at 25]. At two appointments in January and February 2022, respectively, Plaintiff again reported to medical that his back hurt worse after Defendant hit him with a baton. [Id. at 27, 29; Doc. 38-1 at 29.].

IV. DISCUSSION

A. Excessive Force

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments," U.S. CONST. amend. VIII, and protects prisoners from the "unnecessary and wanton infliction of pain," Whitley v. Albers, 475 U.S. 312, 319 (1986). To establish an Eighth Amendment claim, an inmate must satisfy both an objective component – that the harm inflicted was sufficiently

serious – and a subjective component – that the prison official acted with a sufficiently culpable state of mind. Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996).

This subjective standard requires proof of malicious or sadistic action by a prison official in order to make out an excessive force claim. This is because prison "[o]fficials are entitled to use appropriate force to quell prison disturbances." Williams, 77 F.3d at 761. "Because officials must act 'in haste, under pressure, and frequently without the luxury of a second chance,' deliberate indifference is not a sufficiently rigorous standard." Id. (citing Whitley, 475 U.S. at 320). "[I]n making and carryout decisions involving the use of force to restore order, prison officials undoubtedly must take into account the very real threats the unrest presents to inmates and prison officials alike, in addition to the possible harms to inmates against whom force might be used." Whitley, 475 U.S. at 320. "[I]n these circumstances, in order to make out an Eighth Amendment claim, a prisoner must demonstrate that officials applied force maliciously and sadistically for the very purpose of causing harm." Williams, 77 F.3d at 761 (internal quotations and citation omitted).

Moreover, "[c]orrectional officers do not have to be under physical attack to justify the use of force; they can also use appropriate force 'to

preserve internal order by compelling compliance with prison rules and procedures.'" Shiheed v. Harding, 802 Fed. App'x 765, 767 (4th Cir. 2020) (quoting Brooks v. Johnson, 924 F.3d 104, 112 (4th Cir. 2019)). "'And we owe officers wide-ranging deference in their determinations that force is required to induce compliance with policies important to institutional security.'" Id. (quoting Brooks, 924 F.3d at 112).

The forecast of evidence here shows that no constitutional violation occurred. Defendant Baers admitted to using force on the Plaintiff while trying to maintain and restore order during a prisoner attack on an officer. The forecast of evidence shows that Defendant rushed to the scene of a Code 7, quickly took stock of the situation, and ordered the prisoners at the bottom of the stairs to get back. Plaintiff did not respond, presumably because he did not hear the Defendant, and the Defendant used her baton to push him out of the way and stood guard until other officers arrived.

From this forecast of evidence, no reasonable juror could conclude that Defendant pushing the Plaintiff with a baton a single time in the midst of a raucous and evolving prisoner attack on an officer was done maliciously and sadistically for the very purpose of causing harm. Rather, any reasonable juror would conclude that Defendant's action was undertaken to compel compliance and mitigate the very real possibility of further disorder by

Plaintiff or other prisoners. Plaintiff did not need to be acting aggressively or in a threatening manner to warrant a use of force under these circumstances. It is enough that Defendant Baers yelled "get back" and Plaintiff failed to respond, regardless of whether Plaintiff heard her or not. While Plaintiff disputes having heard Defendants Baers give him an order to move away from the stairs, the forecast of evidence shows that she did. Plaintiff cannot know what he did not hear. Moreover, it is irrelevant whether Plaintiff was pushed in the arm or in the back. Even considering that one of the parties may have misremembered where the Plaintiff was hit, this discrepancy does not create a genuine issue of material fact for a jury to decide, because it is undisputed that force was used on the Plaintiff in the first place. As such, there is no genuine issue of material fact as to Plaintiff's excessive force claim, and it will be dismissed.

### B. Qualified Immunity

"Qualified immunity protects officers who commit constitutional violations but who, in light of clearly established law, could reasonably believe that their actions were lawful." Henry v. Purnell, 652 F.3d 524, 531 (4th Cir. 2011) (en banc). "To determine whether an officer is entitled to qualified immunity, the court must examine (1) whether the plaintiff has demonstrated that the officer violated a constitutional right and (2) whether

that right was clearly established at the time of the alleged violation." E.W. ex rel. T.W. v. Dolgos, 884 F.3d 172, 178 (4th Cir. 2018) (internal quotation marks omitted). The doctrine of qualified immunity "gives government officials breathing room to make reasonable but mistaken judgments and protects all but the plainly incompetent or those who knowingly violate the law." Smith v. Ray, 781 F.3d 95, 100 (4th Cir. 2015) (internal quotation marks omitted).

Here, because Plaintiff has not presented a forecast of evidence that Defendant violated a constitutional right, Defendant is entitled to qualified immunity on Plaintiff's individual capacity claim. As such, summary judgment for Defendant would also be proper for Defendant on this ground.

## V. CONCLUSION

For the reasons stated herein, the Court will grant Defendant's Motion for Summary Judgment.

## ORDER

**IT IS, THEREFORE, ORDERED** that Defendant's Motion for Summary Judgment [Doc. 35] is **GRANTED** and this matter is **DISMISSED WITH PREJUDICE**.

The Clerk is respectfully instructed to terminate the motion filed at Docket No. 38, which the Court has construed as Plaintiff's Response, and

to update the docket in this matter to reflect the true, full name of Defendant FNU Baers as Karen Baers.

**IT IS SO ORDERED**.

Signed: September 5, 2023

Martin Reidinger
Chief United States District Judge

13

Case 5:22-cv-00014-MR   Document 41   Filed 09/06/23   Page 13 of 13